# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **DANIELE DePAOLIS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:19CV00322 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **VIRGINIA DEPARTMENT OF** | ) | By: James P. Jones |
| **CORRECTIONS, ET AL.,** | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

*Daniele DePaolis, Pro Se Plaintiff; Jeff W. Rosen, Pender & Coward PC, Virginia Beach, Virginia, for Defendants Moore, Bledsoe, Ball, and McCoy; Margaret Hoehl O'Shea, Assistant Attorney General, Office of the Attorney General of Virginia, Richmond, Virginia, for Defendants Virginia Department of Corrections and Tate.*

The plaintiff, a Virginia inmate proceeding pro se, brings this civil rights complaint under 42 U.S.C. § 1983 and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, alleging that the defendants have provided him with inadequate medical care for a blocked salivary gland and shoulder discomfort. He has also moved for preliminary injunctive relief. After review of the record, I conclude that the defendants' Motion for Summary Judgment and Motion to Dismiss must be granted and that the plaintiff is not entitled to preliminary injunctive relief.

# I. BACKGROUND.

## A. Plaintiff's Allegations and Claims.

The plaintiff, Daniele DePaolis, is confined at Red Onion State Prison ("Red Onion"), a prison facility operated by the Virginia Department of Corrections ("VDOC") in Pound, Virginia. He alleges that his throat started swelling on July 20, 2017. When he saw Dr. Paul Moore for this complaint, the doctor allegedly "misdiagnosed him, stating it's probably just a little swelling from your jaw. I'll order you some Motrin." Compl. 1, ECF No. 1.

Cheri Dickenson ordered DePaolis antibiotics for his throat issue, which he alleges "was a misdiagnosis of the problem." *Id.* at 2. Dr. Moore eventually sent DePaolis to Dr. Hollyfield who allegedly "ran a cat scan and found a stone in [DePaolis'] saliva gland [and] [t]hen performed a botched surgery" on March 13, 2018. *Id.* at 1-2. Afterwards, Dr. Hollyfield said that DePaolis needed a more invasive surgery than he was able to perform. In January of 2019, DePaolis was sent to a specialist who allegedly "tried to fix what Dr. Hollyfield botched but something went wrong and they lost the stone." *Id.* at 2. The specialist told DePaolis that it would be best to have the saliva gland removed or he would keep having problems with it. DePaolis states that in April 2019, when he filed this Complaint, the gland still "swells up with blood underneath his tongue, and bleeds out." *Id.*

DePaolis also complains that on April 9, 2018, Dickenson "misdiagnosed him and stated that there was absolutely nothing wrong with his shoulder and everything [was] normal." *Id.* Nearly seven months later, two doctors at Sussex I State Prison ("Sussex I") performed the same test on DePaolis's shoulder and reached "a major difference in results." *Id.* As a result of their diagnoses, these doctors ordered an arm sling for DePaolis to wear and wrote orders for him not to be handcuffed behind his back and for a bottom bunk assignment. DePaolis alleges that these orders were "permanent." *Id.*

Despite these orders, when DePaolis returned to Red Onion, Nurse J. Bledsoe and Nurse Practitioner ("NP") Ball allegedly told DePaolis on April 9, 2019, that there was nothing wrong with his shoulder. They informed him that he did not need an arm sling or to avoid being handcuffed behind his back. With NP Ball's approval, Nurse McCoy allegedly cut off the arm sling DePaolis was wearing. Bledsoe and NP Ball continued the prescription for naproxen pain medication that the doctors at Sussex I had written for his shoulder.

Major Tate, the head of Red Onion security, has allegedly ordered his subordinates to handcuff DePaolis behind his back. When he is cuffed behind his back, the "shoulder to what feels like it pops out of place then pops back into place when the handcuffs are removed and he's able to bring his arm back around to the

front of him. Which causes severe pain, suffering and numbness for duration of periods of a time, when he's handcuffed behind his back." *Id.* at 4.

The Complaint asserts the following claims: (1) Dr. Moore and Cheri Dickenson committed malpractice by misdiagnosing DePaolis' problems with his salivary gland, Dr. Hollyfield committed malpractice when performing surgery on DePaolis' salivary gland; and Dickenson committed malpractice by misdiagnosing DePaolis' shoulder problem; (2) Nurse Bledsoe and NP Ball were deliberately indifferent to a serious medical need when they deprived DePaolis of his arm sling and his order for front cuffing only; (3) Bledsoe, Ball, and McCoy used excessive force against DePaolis when they cut off his arm sling; and (4) Tate used excessive force against DePaolis by ordering officers to cuff him behind his back.

The VDOC and Major Tate have filed a Motion to Dismiss, and defendants Moore, Bledsoe, Ball, and McCoy have filed a Motion for Summary Judgment.[1]

---

[1] Defendants Dr. Hollyfield and Cheri Dickenson have not appeared in the case. DePaolis has alleged only medical malpractice claims against these defendants under state law, which may be litigated in a § 1983 action only through the exercise of supplemental jurisdiction. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) ("Section 1983 was intended to protect only federal rights guaranteed by federal law, and not tort claims for which there are adequate remedies under state law."). Because I herein conclude that the other defendants are entitled to summary judgment as to DePaolis' § 1983 claims of deliberate indifference and excessive force, I will decline to exercise supplemental jurisdiction over his state law claims of medical malpractice. Accordingly, I will summarily dismiss his claims against Dr. Hollyfield and Cheri Dickenson without prejudice. *See* 28 U.S.C. § 1367(c).

DePaolis has responded to the defendants' motions, making them ripe for disposition.

## B. The Defendants' Evidence.

In support of their Motion for Summary Judgment, Moore, Bledsoe, Ball, and McCoy offer records concerning the treatment provided to DePaolis during the period in question. In August of 2018, Dr. Moore, the Red Onion dentist, referred DePaolis to the Virginia Commonwealth University Medical Center ("VCU") to be evaluated for oral surgery on a blocked salivary gland. DePaolis was moved to Sussex I. On January 16, 2019, after a CT scan requested by VCU, he was reevaluated and a laser ablation of the salivary glad was recommended. Dr. Robert Strauss performed that procedure on March 12, 2019. DePaolis had a follow up examination at VCU on March 20, 2019. The surgeon's report from that visit states, "No further surgical intervention required. Patient healing well with no sign of infection or reported pain." Mem. Supp. Mot. Summ. J. Ex. 2, ECF No. 26-2 Two weeks of wound care with a topical antibiotic was recommended. After that care, the treating physician wrote that no further treatment was needed and that "the patient looks great." *Id.* at Ex. 3, ECF No. 26-3.

On April 5, 2019, DePaolis was transferred back to Red Onion, with a sling on his right arm, a brace on his right wrist, and a medical transfer note indicating the need for a daily dressing change until the wound healed. Red Onion staff placed

him in medical housing, pending clarification of his needs. On April 9, 2019, Nurse Bledsoe, the Health Services Administrator, consulted with Sussex I medical personnel. She was informed that DePaolis's use of the sling would cause damage to his shoulder and that he had range of motion and function in that limb. Bledsoe also learned that DePaolis had used the wrist brace for a couple of years.

On April 9, 2019, NP Ball examined DePaolis. She noted that an X-ray report from October of 2018 showed only a mild, degenerative changes in his shoulder. An earlier X ray of his right shoulder on April 9, 2018, showed "[n]o significant degenerative changes" and "[n]o acute abnormality" of the joint. *Id.* at Ex. 8, ECF No. 26-8. DePaolis was provided an ace wrap for his wrist. He did not mention his surgery, the wound, or any drainage during NP Ball's examination, or at any time thereafter. On April 10, 2019, Major Tate approved DePaolis for use of the elastic wrist brace, and DePaolis was transferred from medical housing to the general population. Between April 5 and June of 2019, DePaolis did not submit any request for medical or dental care.

### C. The Motion for Interlocutory Relief.

A month after filing his § 1983 Complaint, DePaolis filed a Motion for a Preliminary Injunction or Temporary Restraining Order. In it, he alleges that beginning April 9, 2019, his

> throat has swelled up with blood and is making it hard for him to breathe. The medical staff (Defendants) claimed [he] is perfectly fine

and there's nothing wrong with him. But you can literally see a swollen ball of blood under his tongue in his throat that looks like it will rupture at any moment which ultimately might choke and suffocate [him] to death or cause him to bleed out. [He] already let it be known to the defendants he can taste a discharge in his mouth to which they stated "oh that's normal."

Mot. Prelim. Inj. 2, ECF No. 11. DePaolis demands to be transferred to Sussex I to receive proper treatment or surgery from the specialist.

The defendants have responded to DePaolis' motion with additional evidence. On June 12, 2019, VDOC Regional Medical Director Kevin Fox, M.D., examined DePaolis. Dr. Fox noted that while DePaolis reported "some blood drain[age] from a spot inside his mouth" a month before, "[h]e did not inform medical or dental at that time." Opp'n Mot. Prelim. Inj. Ex. 1, ECF No. 23-1. Dr. Fox indicated that he had no way of validating DePaolis's claim, that he observed no pus or drainage, and that if there had been some post-operative fluid collection, none was present during the examination on June 12, 2019. Dr. Fox prescribed an antiseptic rinse and a follow up dental examination for an unrelated tooth problem.

## II. DISCUSSION.

### A. The Motion for Interlocutory Relief.

To obtain a preliminary injunction, a plaintiff must establish that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an

injunction is in the public interest.[2]  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S.

7, 20 (2008).  Critically, *each* of these four requirements must be satisfied. Id.

Moreover, a plaintiff must make a "clear" showing both that he is likely to suffer

irreparable harm absent relief and he is likely succeed on the merits at trial.  *Id.*

DePaolis has not disputed the accuracy of Dr. Fox's medical findings on June

12, 2019, that no post-operative fluid collection was present at the surgery site at

that time.  Thus, under the second factor of the *Winter* analysis, I cannot find that

DePaolis has shown any likelihood that he will suffer irreparable harm in the absence

of preliminary injunctive relief requiring treatment or transfer.  Accordingly, I will

deny his motion.

### B.  Standards of Review.

Rule 12(b)(6) permits a party to move for dismissal of a complaint for failure

to state a claim upon which relief can be granted.  When deciding a motion to dismiss

under this rule, the court must accept as true all well-pleaded allegations and draw

all reasonable factual inferences in the plaintiff's favor.  *Erickson v. Pardus*, 551

U.S. 89, 94 (2007).  "While a complaint attacked by a Rule 12(b)(6) motion to

---

[2]  DePaolis also requests a temporary restraining order.  Temporary restraining orders are issued only rarely, when the movant proves that he will suffer injury if relief is not granted before the adverse party could be notified and have opportunity to respond.  *See* Fed. R. Civ. P. 65(b).  As it is clear that DePaolis is not entitled to a preliminary injunction, I find no basis upon which to grant him a temporary restraining order.

dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In short, a motion for summary judgment should be granted when the proof, taken in the form admissible at trial and resolving all factual doubts in favor of the non-moving party, would lead a reasonable juror to but one conclusion. *Id.* at 247-52. I must "view the facts and draw reasonable inferences in a light most favorable" to DePaolis, as the nonmoving party. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

---

[3] I have omitted internal quotation marks, alterations, or citations here and throughout this Opinion, unless otherwise noted.

The defendants moving for summary judgment have filed supporting affidavits and documentation. Accordingly, to survive the defendants' motions, DePaolis must present sufficient evidence that could carry the burden of proof of his claims at trial. *Id.* He "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine [factual] issue for trial" on which the jury could find in his favor. *Anderson*, 477 U.S. at 248. "[U]nsupported speculation is not sufficient to defeat a summary judgment motion." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875 (4th Cir. 1992).

## C.  Initial Matters.

Some of DePaolis's claims fail at the outset. To state a cause of action under 42 U.S.C. §1983, the plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a *person* acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). The VDOC and the moving defendants in their official capacities are protected by immunity against damage claims in federal court. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, I will grant the defendants' motions as to all § 1983 claims for monetary damages against them in their official capacities.

DePaolis also contends that he is entitled to relief against the VDOC and the movant defendants under the Rehabilitation Act. The Rehabilitation Act states that

"No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a). A plaintiff seeking recovery under the Rehabilitation Act "must allege that (1) [he] has a disability; (2) [he] is otherwise qualified to receive the benefits of a public service, program, or activity; and (3) [he] was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of [his] disability."[4] *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005). DePaolis fails to allege these basic elements of a discrimination claim under the Rehabilitation Act.[5]

Moreover, the gravamen of DePaolis' claims is that the VDOC and the other defendants denied him medical accommodations that other medical professionals

---

[4] These same elements are required to show a violation of Title II of the Americans with Disabilities Act ("ADA"), and "the substantive standards for determining liability are the same" for both statutes. *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 288 (3d Cir. 2019).

[5] DePaolis rests his entire Rehabilitation Act claim on a citation: *Bane v. Va. Dep't of Corr.*, 267 F. Supp. 2d 514, 521 (W.D. Va. 2003) (denying motion to dismiss inmate's Rehabilitation Act claim that prison guards handcuffed plaintiff's arms behind his back *despite* medical order prohibiting such cuffing). The circumstances at issue in *Bane* are factually distinguishable from the claims DePaolis is raising, however, because DePaolis was not handcuffed behind his back until *after* medical professionals rescinded the medical order exempting him from such cuffing upon determining that it was no longer medically indicated.

had previously prescribed for him.  I conclude that these claims arise, if at all, under the Eighth Amendment and not under the Rehabilitation Act.  *See Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (holding that ADA was not "violated by a prison's simply failing to attend to the medical needs of its disabled prisoners.  No discrimination is alleged; Bryant was not treated worse because he was disabled.").  Accordingly, I will grant the defendants' motions as to any claim under the Rehabilitation Act.

### D.  Deliberate Indifference Claims.

A prisoner has a Eighth Amendment right to the medical care necessary to address his serious medical needs.  *Estelle*, 429 U.S. at 103-04.    To prevail in a constitutional claim concerning prison medical care, an inmate must show that the defendant "had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).  The defendant may be held not liable if he responded reasonably to a risk of harm, even if the harm was ultimately not averted.  *Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

"[A]n inadvertent failure to provide adequate medical care" does not amount to deliberate indifference, and thus mere negligence in diagnosis or treatment is insufficient to support a constitutional claim.  *Estelle*, 429 U.S. at 105-06.  Moreover, disagreements between the inmate and medical staff over questions of

medical judgment regarding the proper course of treatment provide no basis for § 1983 relief. *Wright*, 766 F.2d at 849; *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). A medical professional does not commit a constitutional violation by merely answering "the question whether an X ray or additional diagnostic techniques or forms of treatment [are] indicated." *Estelle*, 429 U.S. at 107.

In his § 1983 Complaint, DePaolis has not asserted a claim that any of the movant defendants failed to provide him with treatment before or after his salivary gland surgery, nor would such a claim be supported by the record. From his first complaint about his throat, Dr. Moore provided pain medication. Dickenson ordered antibiotics. They monitored the problem and later referred DePaolis to Dr. Hollyfield for testing and surgery. When Dr. Hollyfield recommended different treatment than he could provide, DePaolis was sent to a specialist at VCU and ultimately underwent another surgical procedure on the troublesome gland. At follow up examinations, the surgeon reported that the surgery was successful, DePaolis was healing well with no signs of infection or reports of pain, and that no further treatment was necessary.

DePaolis apparently faults Dr. Moore, Dickenson, and Dr. Hollyfield for not immediately recognizing that salivary gland surgery was necessary and for providing other treatments instead. Such allegations of misdiagnosis sound in negligence, at the most, and do not show deliberate indifference by any of these

professionals regarding DePaolis' throat issue. Thus, I conclude that the movant defendants are entitled to summary judgment as a matter of law as to any claims concerning this medical condition.

Likewise, the evidence in the record does not establish any disputed fact on which DePaolis could show that any of the movant defendants acted with deliberate indifference to his shoulder problem. On April 8, 2019, Nurse Bledsoe conferred with medical professionals at Sussex I about DePaolis's right shoulder. While the staff there had provided DePaolis with the arm sling in September of 2018 and an order for no cuffing behind his back in February of 2019, their assessment of his shoulder and treatment needs had changed by April of 2019. They reported to Nurse Bledsoe that DePaolis had full range of motion and function and that use of the sling was causing damage to the shoulder. NP Ball examined DePaolis on April 8, 2019, and reviewed an X-ray report from October of 2018 that showed only mild degenerative changes in that shoulder.

On this evidence, these professionals at Red Onion determined that DePaolis should no longer use the arm sling and did not have a medical need for front cuffing. DePaolis' mere disagreement with these medical judgments, based on his current shoulder condition, is not sufficient to support a finding that these defendants acted with deliberate indifference to his medical needs regarding his shoulder. Furthermore, defendant Tate could rightfully rely on the judgment of

DePaolis' medical care providers at Red Onion that he could be safely cuffed behind his back.

Moreover, DePaolis has not alleged that since April 8, 2019, he has requested further evaluation or treatment for his shoulder. If he is experiencing pain or other problems with his shoulder from being cuffed behind his back, he may file appropriate requests for assessment and care. He cannot, however, hold the defendants liable for his current medical problems of which he has not yet informed them.

### E. Excessive Force Claims.

The Eighth Amendment does not prohibit all applications of force or infliction of pain against prisoners. *United States v. Gore*, 592 F.3d 489, 494 (4th Cir. 2010). An "Eighth Amendment analysis necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). Only uses of force that "inflict[] unnecessary and wanton pain and suffering" can qualify as unconstitutional punishment in the excessive force context. *Whitley v. Albers*, 475 U.S. 312, 320 (1986).

The objective component "focuses not on the severity of any injuries inflicted, but rather on the nature of the force which must be nontrivial." *Tedder v.*

*Johnson*, 527 F. App'x 269, 272 (4th Cir. 2013) (unpublished). The subjective component turns on deciding "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. at 320-21.

I cannot find that any of the circumstances at issue in this case qualify as unconstitutional, excessive force. DePaolis' descriptions of Nurse McCoy cutting off his sling and officers cuffing his hands behind his back simply do not support a reasonable inference that the force used in these procedures was more than trivial. Moreover, the defendants took these actions only after medical professionals approved them as nonharmful to DePaolis' shoulder in light of his current medical condition. As such, DePaolis has not presented facts showing that the defendants took his sling and allowed him to be cuffed behind his back "maliciously and sadistically for the very purpose of causing harm." *Id.* Accordingly, I will grant the defendants' motions as to his excessive force claims.

### III. CONCLUSION.

For the reasons set forth in the Opinion, it is **ORDERED** as follows:

1.    The Motion for Preliminary Injunction/Temporary Restraining Order, ECF No. 11, is DENIED;

2.    The Motion for Summary Judgment, ECF No. 25, is GRANTED;

3.    The Motion to Dismiss, ECF No. 33, is GRANTED; and

4.  All claims against defendants Dr. Hollyfield and Cheri Dickenson are DISMISSED WITHOUT PREJUDICE, pursuant to 28 U.S.C. § 1367(c), as I decline to exercise supplemental jurisdiction over them.

A separate Judgment will be entered herewith.

ENTER:  November 13, 2019

/s/  James P. Jones
United States District Judge